[Nos. 17545–9–I; 17546–7–I. Division One. July 22, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. KEITH LYLE
SCOTT, ET AL, *Defendants,* FERDINAND BROWN,
*Appellant.*

562

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael J. Lambo, Deputy,* for respondent.

SCHOLFIELD, C.J.—Ferdinand Brown appeals his conviction for burglary in the second degree. We affirm.

## FACTS

Tong Shu Kim, a graduate student at the University of Washington, was driving toward his apartment in the University–owned Blakely apartment complex on March 26, 1985. As Kim drove past his friend Sung's apartment, he observed a car parked nearby with three black males standing around it, one of whom was wearing a black suit.

About 10 minutes later, in driving back toward the University, Kim noticed the three males standing near Sung's apartment. Kim became suspicious and circled around to take another look and then observed only the male in the black suit standing outside an open window in Sung's apartment.

Kim left the complex and contacted a parking enforcement officer, explaining that he believed a burglary was in progress, describing the car as a light brown Ford, and giving the license number. Kim then went back to the apartment with police officers, but the vehicle and its occupants were gone. Kim climbed through the open window to unlock the door (which had been tampered with) for the officers, and then a search of the premises was conducted. Kim was quite familiar with Sung's possessions and was able to tell the officers that the missing items included a JVC VCR, an IBM personal computer with accessories, and a 19–inch television.

Another police officer, having heard the description of the light brown Ford over his radio, observed a light brown Ford, bearing the license number reported by Kim, traveling south on Montlake Boulevard. The occupants were three black males who were later identified as Brown, his

codefendant Williamson, and Scott, who was wearing a black suit. After stopping the vehicle, the officer observed Brown sitting in the backseat, along with a 19–inch Zenith television, a Zenith AM–FM radio, an IBM personal computer with accessories, and a JVC VCR. A later warrant–authorized search of the vehicle located a black valise containing a set of slip–joint pliers and a large screwdriver.

Sung, the victim of the burglary, informed the prosecutor several weeks before trial that he planned to be gone on a trip to Korea to visit his ill wife between academic quarters and would not be able to attend the trial. The prosecutor arranged to preserve Sung's testimony by a pretrial deposition, which was taken after notice to defense counsel, who attended the deposition and cross–examined Sung. Apparently, Sung was then released from his subpoena. Defense counsel reserved the right to object to the deposition at trial. At trial, defense counsel did object to Sung's deposition on the basis that Sung was not "unavailable" as required by ER 804(b)(1).

The trial court admitted Sung's deposition, the substance of which was that he was informed of the burglary and went back to his apartment to find various items missing, including the television, computer and VCR. He also testified he had not given Brown, Williamson or Scott permission to enter his apartment.

In his rebuttal closing argument concerning accomplice liability, the deputy prosecutor stated:

> We don't have to prove that [the defendants] assisted in the entry in the sense they helped Scott jump through or pushed him through the window. Certainly carrying the stuff out to the car would be enough, and *certainly directing someone where to drive to get out of the area would be enough, and certainly looking in through the window would be—*

(Italics ours.)

Defense counsel objected to the italicized portions, arguing that they constituted misstatements of the law. The trial court overruled the objections, noting that the jury

would have the instructions in the jury room.

The trial court's instructions did not contain a definitional instruction on knowledge, although one of the elements of accomplice liability is that a person *knowingly* either aid the committer of the crime or solicit or encourage another to commit a crime. No defense objection was made to this omission, and no instruction defining knowledge was proposed.

## ADMISSION OF THE SUNG DEPOSITION

Brown assigns error to the admission of the Sung deposition, arguing that Sung was not unavailable as required by ER 804.[1] (There is no question that Sung's deposition constitutes "former testimony" pursuant to ER 804(b)(1).) CrR 4.6 authorizes preserving testimony by deposition, where it appears a witness may be unavailable for trial. The admissibility of the deposition at trial is governed by the Rules of Evidence. CrR 4.6(d). ER 804(b)(1) requires the proponent of the evidence to establish unavailability of the declarant before deposition testimony may be admitted at trial. The State must make a good faith effort to obtain the presence of the witness at trial before the witness can be considered

---

[1]ER 804 reads in pertinent part:

"**(a) Definition of Unavailability.** 'Unavailability as a witness' includes situations in which the declarant:

". . .

"(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subsection (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

"(6) A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

"**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

unavailable. *State v. Goddard,* 38 Wn. App. 509, 685 P.2d 674 (1984); *State v. Sanchez,* 42 Wn. App. 225, 230, 711 P.2d 1029 (1985); *State v. Sweeney,* 45 Wn. App. 81, 85, 723 P.2d 551 (1986).

We find the three cases cited above to be dispositive on the issue of the admissibility of the Sung deposition. In *State v. Goddard, supra,* the State took the deposition of the witness and then permitted him to return to California and apparently made no further effort to obtain his presence at trial. He could have been kept under subpoena. An effort could have been made to obtain his presence through the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. RCW 10.55.010 *et seq.* In *Goddard,* we held that the State failed to show a good faith effort to obtain the presence of the witness at trial.

In *State v. Sanchez, supra,* the testimony of a witness was preserved by a videotaped deposition, and the witness was then allowed to proceed on her vacation. The court held that because the prosecution failed to show a good faith effort to obtain the presence of the witness at trial, the videotaped deposition was improperly admitted.

In *State v. Sweeney, supra,* the witness, a minor, gave her testimony by deposition and then was released to live with her mother in California. In the affidavit supporting the motion to admit the deposition at trial, the prosecutor stated that the witness had been served with a subpoena before she left for California. The prosecutor did not learn that the witness was unwilling to appear until very shortly before trial. The court held that a good faith effort to obtain the presence of a witness at trial requires resort to the procedures available under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, RCW 10.55, before unavailability can be established as required by ER 804, and the State's failure to do so was reversible error.

In the case sub judice, there is no showing by the State that a good faith effort was made to obtain Sung's presence

at trial through subpoena. Brown asserts in his brief that after Sung gave his deposition, Sung was released from his subpoena, and the State does not deny this assertion. Under these circumstances, there was no showing of unavailability sufficient to authorize the admission into evidence of Sung's deposition testimony, and to do so was error.

We find, however, under the circumstances of this case, that the error in admitting the Sung deposition was harmless. In his deposition, Sung testified to the items that were taken from his apartment and to the fact that he had not given Brown or any of the others involved permission to enter his apartment. The testimony of Tong Shu Kim provided undisputed evidence of the same information that was contained in the Sung deposition. Kim identified the items that were taken from Sung's apartment based upon his personal knowledge of Sung's possessions. His description of the items taken matched the description of the items found in the backseat of the Ford automobile in which Brown was riding at the time of his arrest. There was evidence from Kim that Sung was not acquainted with the three men occupying the Ford car at the time it was stopped. The evidence that the window was pried open and that the front door knob was damaged in an apparent effort to get into the apartment is evidence from which the jury can readily infer that the entry was not with permission of the owner.

It should further be noted that a review of the final argument made by Brown's counsel in this case discloses that he conceded that a burglary had occurred and that he did not at any time argue that the items found in the Ford automobile did not come from Sung's apartment. Nor did he argue at any time that the defendants had permission to enter Sung's apartment. Under these circumstances, we are satisfied that the error in admitting the Sung deposition did not affect the outcome of the trial and was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d

1065 (1967); *State v. Evans,* 96 Wn.2d 1, 4, 633 P.2d 83 (1981).

### FAILURE TO DEFINE KNOWLEDGE

The State's theory against Brown was that he was guilty as an accomplice. The trial court instructed on accomplice liability in instruction 7.[2] Brown argues that in failing to define "knowledge", the State was relieved of its burden of proving every element of the crime beyond a reasonable doubt. Brown took no exception below to the failure to define knowledge. Brown proceeds on the assumption that knowledge as used in defining accomplice liability is an element of the offense.

Further definition of an element of a crime is required if the element is not one of common understanding. *State v. Pawling,* 23 Wn. App. 226, 597 P.2d 1367, *review denied,* 92 Wn.2d 1035 (1979); *State v. Davis,* 27 Wn. App. 498, 618 P.2d 1034 (1980). In *State v. Allen,* 101 Wn.2d 355, 678 P.2d 798 (1984), the Washington Supreme Court held that failure to define the mental element of intent is reversible error if such a definitional instruction is requested. *Allen,* at 362. One court has also stated in dicta that "it would be constitutional error to fail to define intent", which would allow a defendant to raise the issue for the first time on appeal. *State v. Boot,* 40 Wn. App. 215, 218, 697 P.2d 1034 (1985).

The foregoing cases have all concerned failure to define the mental element of the crime charged. In the case before

---

[2] "A person who is an accomplice in the commission of a burglary is guilty of that crime whether present at the scene or not.

"A person *is accomplice in the commission of a burglary,* if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

"(1) solicits, commands, encourages, or requests another person to commit that crime; or

"(2) aids or agrees to aid another person in planning or committing the burglary.

"The word 'aid' means all assistance whether given by words, acts, encouragement or support. A person who is present at the scene and is ready to assist in the burglary by his or her presence is aiding in the commission of the crime." Instruction 7.

us, we are dealing with a mental element contained in a definition of accomplice liability. We are not convinced that such a term is necessarily an "element of the crime" requiring further definition. If it is not an element of the crime, Brown's argument that the issue of the trial court's failure to define knowledge may be raised for the first time on appeal is unfounded.

However, even assuming for the purposes of argument that the term "knowledge" in the definition of accomplice liability is an element of the crime, and thus failure to define knowledge was constitutional error, this issue cannot be raised for the first time on appeal.

■ Generally, an appellant may not raise for the first time on appeal an issue not argued below. *Smith v. Shannon*, 100 Wn.2d 26, 666 P.2d 351 (1983). A party may raise for the first time on appeal a "manifest error affecting a constitutional right" under RAP 2.5(a)(3).[3] However, this limited exception provided by the rule is often construed too broadly.

In this regard, we find the court's comments in *State v. Valladares*, 31 Wn. App. 63, 639 P.2d 813 (1982), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983) to be instructive:

> First, it should be understood that RAP 2.5(a)(3) in no way affects the discretion of this court to refuse review of issues not raised below. The rule merely enunciates our long–standing practice of addressing error where justice clearly demands we do so. This discretion will generally be exercised in favor of review when there exists "manifest error affecting a constitutional right." . . . RAP 2.5(a)(3) may not be invoked merely because defendant can identify a constitutional issue not litigated below.

(Citations omitted.) *Valladares*, at 75–76.

Thus, "absent obvious and manifest injustice, we will not

---

[3] "The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . manifest error affecting a constitutional right. A party or the court may raise at any time the question of appellate court jurisdiction." RAP 2.5(a)(3).

review assignments of error based upon the giving or refusal of instructions to which no timely exceptions were taken." (Footnote omitted.) *State v. Louie,* 68 Wn.2d 304, 312, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042 (1967). The requirements of this procedural rule are constitutional, as is the requirement of reasonable compliance with the rule, especially where it does not appear that an accused is thereby deprived of a fair trial. *Louie,* at 312.

In the case before us, Brown presented no evidence to suggest that knowledge was at issue. In fact, Brown presented no witnesses or testimony at all. Defense counsel's closing argument focused on the insufficiency of the State's evidence concerning his participation in the acts constituting either burglary or accomplice liability. At no time does Brown argue that he participated in the acts *without the requisite mental state.* Thus, we find that knowledge was not an issue at trial.

It is not possible, therefore, for Brown to argue that the trial court's failure to define knowledge created "obvious and manifest injustice," even if it is assumed that any error affected Brown's constitutional right to have all elements of a crime defined. Brown's assignment of error is without merit.

### ALLEGED PROSECUTORIAL MISCONDUCT

Brown assigns error based on the assertion that in his closing argument, the prosecutor made a statement not supported by the law of accomplice liability. That portion of the prosecutor's argument objected to is as follows:

> We don't have to prove that [the defendants] assisted in the entry in the sense they helped Scott jump through or pushed him through the window. Certainly carrying the stuff out to the car would be enough, and certainly directing someone where to drive to get out of the area would be enough, and certainly looking in through the window would be—

At that point, defense counsel objected. The objection was overruled with the trial court's comment that "[t]he jury will have the instructions in the jury room."

In making his argument that a misstatement of the law by the prosecutor is serious misconduct requiring a new trial, Brown relies primarily upon *State v. Davenport,* 100 Wn.2d 757, 675 P.2d 1213 (1984). In *Davenport,* the jury was instructed on second degree burglary without any instruction on accomplice liability. Despite the absence of any instruction on accomplice liability, the prosecutor in his closing argument stated that: "it doesn't make any difference actually who went into the house . . . they are accomplices". *Davenport,* at 761. After over 2½ hours of deliberation, the jury sent out a note to the trial judge requesting a definition of

> "'accomplice' in terms of participation in the crime of burglary, *i.e.,* does the defendant have to physically enter and remove the identified items or can he be simply an outside participant?"

The following morning, the trial judge sent a note to the jury directing the jury to "'rely on the law given in the Court's instructions to the jury.'" *Davenport,* at 759. Davenport's conviction was reversed because the prosecutorial comment involved a theory of liability on which the court had not instructed, and it was clear from the jury's inquiry to the trial judge that they were considering accomplice liability as a possible basis for a jury verdict.

The facts of *Davenport* make it readily distinguishable from the case before us, where the prosecutor's inaccurate statement was far less serious than in *Davenport.* In this case, the jury was instructed on accomplice liability. Directing someone where to drive would not, by itself, prove accomplice liability. However, directing someone where to drive would tend to support a finding of accomplice liability if accompanied by evidence that it was done to facilitate the commission of the crime. Any possible confusion created by the statement objected to could easily be resolved by a careful reading of instruction 7.

■ Under the circumstances here, we are satisfied that the prosecutor's comments did not influence the outcome of

the trial and therefore amounted to harmless error. *State v. Cunningham*, 93 Wn.2d 823, 613 P.2d 1139 (1980).

### SUFFICIENCY OF THE EVIDENCE

Brown argues that the State failed to prove any more than his mere presence near the scene of the burglary and that such a showing was not sufficient to sustain a conviction.

The State argues that Brown's participation in the burglary was proven beyond a reasonable doubt.

 The evidence in a criminal prosecution is not sufficient to support a conviction if, considering the evidence most favorable to the State, no rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 670 P.2d 646 (1983). *See also Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

In *In re Wilson,* 91 Wn.2d 487, 588 P.2d 1161 (1979), the Supreme Court reversed a finding of accomplice liability, holding that mere presence at the commission of a crime did not make a bystander an accomplice and that presence without intent to encourage the crime did not constitute encouragement for purposes of the accomplice statute. *Wilson,* at 492.

In *State v. Rotunno,* 95 Wn.2d 931, 631 P.2d 951 (1981), the Washington Supreme Court overturned a theft conviction, determining that an individual's presence at the scene of a crime, even coupled with knowledge that one's presence would aid in the commission of the crime, will not subject an accused to accomplice liability unless it is established that one is "'"ready to assist"'" in the commission of the crime." *Rotunno,* at 933.

Admittedly, Brown's presence at the site of the burglary alone would be insufficient to find him liable as an accomplice. However, the State's evidence indicated that Brown was found by police officers in the backseat of the burglar's vehicle with the stolen VCR, television, and computer by

his side. The jury could certainly have found that Brown was present and ready to assist or was assisting in the commission of the burglary. We find there was sufficient evidence to convict Brown on an accomplice liability theory, considering the evidence most favorable to the State. A rational fact finder could have found Brown guilty beyond a reasonable doubt.

The judgment is affirmed.

RINGOLD and COLEMAN, JJ., concur.

Review granted by Supreme Court November 3, 1987.