[No. 24573–2–I. Division One. May 6, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. LENARD DOUGLAS WHISLER, *Appellant*.

128

*Scott G. Busby* of *Washington Appellate Defender Association,* for appellant.

*David L. McEachran, Prosecuting Attorney,* and *Betty Brinson, Special Deputy,* for respondent.

AGID, J.—Defendant Lenard Whisler appeals his judgment and sentence for forgery and first degree theft. Whisler argues that the trial court erred in admitting the deposition testimony of Virga Adams, the 94–year–old woman whose check Whisler allegedly forged.

Whisler raises two issues on appeal. First, did the trial court make the requisite findings that Adams was an "unavailable" witness under ER 804 and that admission of her deposition testimony would not violate Whisler's constitutional right of confrontation? Second, assuming the trial court in fact made the requisite findings concerning

unavailability and Whisler's confrontation clause rights, are those findings supported by the evidence? We conclude that the trial court made the requisite findings and that the findings are supported by the evidence. Accordingly, we affirm.

Whisler was charged by information with one count of first degree theft in violation of RCW 9A.56.030(1)(a) and RCW 9A.56.020(1)(b) and one count of forgery in violation of RCW 9A.60.020(1)(a) and (b). On March 1, 1989, Judge Byron L. Swedberg granted Whisler's motion to proceed pro se at trial.[1] The trial was held on May 4 and 5, 1989, before Judge David A. Nichols.

The circumstances surrounding admission of Adams' deposition at trial are as follows. On April 10, 1988, a few days before the original trial date, the State informed Whisler and Judge Swedberg that the State would not be calling Adams to testify because she was not well enough to travel. Whisler did not comment on the State's decision. Two days later, at a pretrial conference the day before the original trial date, the State filed an amended witness list substituting Arloween Dailey, Adams' daughter, for Adams. Dailey had not previously been on the State's witness list. Whisler moved for a continuance based on his inability to contact several witnesses. Judge Swedberg granted the motion and set the case for trial on May 4 and 5, 1989. After the continuance was granted, Whisler raised an objection to Dailey testifying in place of Adams, stating that Dailey should not be permitted to speak for Adams. Judge Swedberg assured Whisler that he could object to Dailey's testimony at trial if she attempted to testify for Adams.

On April 25, 1989, at a hearing on several pretrial motions before Judge Michael Moynihan, Whisler informed

---

[1] Whisler had represented himself in one prior civil trial and in several previous criminal trials. The record reveals that Whisler vigorously pursued his defense and, as the trial court stated on several occasions, had a much more thorough understanding of legal concepts and trial tactics than the typical pro se defendant.

the court that he wished to call Adams as a witness at trial. The State replied that it would resist issuing a subpoena because Adams' physician had advised her not to travel to Bellingham to testify. Judge Moynihan agreed that Whisler should be permitted to call Adams as a witness and directed Whisler to prepare a subpoena.

On May 2, 1989, at a hearing before Judge Swedberg on additional pretrial motions, the State moved to quash the subpoena to Adams. In support of its motion, the State submitted an affidavit summarizing the prosecutor's telephone conversation with Dr. Zrinko Petrak, Adams' physician. According to the affidavit, the prosecutor spoke to Dr. Petrak on April 28, 1989. Dr. Petrak told the prosecutor that Adams was 94 years old, suffers from chronic cardiovascular disease and chronic congestive heart failure, wears a pacemaker and was at risk for blood clots. Adams' condition was not expected to change in the future. Dr. Petrak had discussed with Dailey the possibility of Adams traveling to Bellingham to testify at trial and had advised against it because of Adams' age and serious physical problems. In Dr. Petrak's opinion, Adams could not safely travel from Kennewick to Bellingham to testify because of her heart condition.

After reviewing the affidavit, Judge Swedberg stated that whether he would issue the subpoena requiring Adams to testify would depend on Dr. Petrak's recommendation as confirmed by Whisler. He arranged for Whisler to talk directly to Dr. Petrak. Whisler reported to Judge Swedberg that Dr. Petrak had confirmed the substance of the State's affidavit. Whisler argued that Adams should nonetheless be required to testify because Adams had traveled to Eugene, Oregon, the year before to visit her son. Because Whisler confirmed that the State's affidavit accurately stated Dr. Petrak's opinion, Judge Swedberg refused to issue a subpoena but agreed to arrange for a telephonic deposition of Adams. The deposition was taken the same day, 2 days before trial.

At trial, Whisler would not commit to introducing Adams' deposition. Before resting its case, the State moved to admit Adams' deposition, arguing to Judge Nichols that Judge Swedberg had already found Adams to be "unavailable" and that the "confrontation issues were met" because the deposition had been taken at Whisler's request. Whisler objected. Judge Nichols agreed with the State, finding that Judge Swedberg, having authorized the deposition, had necessarily found that Adams was "unavailable" and that the deposition could thus be admitted by the State under ER 804. Judge Nichols also rejected Whisler's argument that admitting the deposition testimony would violate his confrontation clause rights. The trial court therefore overruled Whisler's objection and allowed the State to read Adams' deposition to the jury.

## THE UNAVAILABILITY DETERMINATION

Whisler contends that the trial court failed to make a proper finding that Adams was "unavailable" for purposes of ER 804(a)(4) and the confrontation clauses of the state and federal constitutions. He argues that while Judge Swedberg properly authorized the taking of Adams' deposition before trial under CrR 4.6(a),[2] neither Judge Swedberg nor Judge Nichols, the trial judge, made a ruling on whether the deposition testimony was admissible as evidence under ER 804.

Under ER 804(a)(4) there is an exception to the hearsay rule pursuant to which a court may admit prior testimony into evidence when the declarant "[i]s unable to be present or to testify at the hearing".[3] If the witness' unavailability

---

[2]CrR 4.6(a) authorizes a court to order a deposition to preserve testimony "[u]pon a showing that a prospective witness may be unable to attend . . . a trial". *See State v. Scott*, 48 Wn. App. 561, 564, 739 P.2d 742 (1987), *aff'd*, 110 Wn.2d 682, 757 P.2d 492 (1988).

[3]ER 804 provides, in pertinent part:
"(a) **Definition of Unavailability.** 'Unavailability as a witness' includes situations in which the declarant:
". . . .

is due to illness or infirmity, the illness or infirmity must be so severe as to render the witness' attendance "relatively impossible and not merely inconvenient.'" (Italics omitted.) *People v. Stritzinger,* 34 Cal. 3d 505, 668 P.2d 738, 194 Cal. Rptr. 431, 439–40 (1983) (quoting *People v. Gomez,* 26 Cal. App. 3d 225, 230, 103 Cal. Rptr. 80 (1972)). Moreover, prior testimony is only admissible against a criminal defendant if the defendant "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." ER 804(b)(1).

■■ Although an out–of–court statement may meet the requirements for a hearsay exception under ER 804, it is only admissible against an accused if it satisfies confrontation clause concerns. *State v. Palomo,* 113 Wn.2d 789, 794, 783 P.2d 575 (1989), *cert. denied,* 111 S. Ct. 80 (1990). The sixth amendment to the federal constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him".[4] Similarly, article 1, section 22 of the Washington State Constitution states that "[i]n criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face". Const. art. 1, § 22 (amend. 10). Although the state constitutional provision arguably gives broader protection than its federal counterpart, our courts have not so interpreted it. *Palomo,* 113 Wn.2d at 794. Our

---

"(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]

". . . .

"(b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former Testimony.* Testimony given as a witness . . . in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

[4]The Sixth Amendment applies to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

analysis is therefore the same under both clauses, and we will refer to them collectively as "the confrontation clause." ■ While ER 804 and the confrontation clause have similar requirements and are designed to protect similar values, the overlap is not complete. *California v. Green,* 399 U.S. 149, 155–56, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). The confrontation clause right is not absolute,[5] and an out-of-court declaration may be admitted under that clause if it satisfies two requirements. First, the declarant must be "unavailable" at the time of trial.[6] Second, the prior testimony must be marked with adequate indicia of reliability. *Ohio v. Roberts,* 448 U.S. 56, 65–66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). Whisler does not argue that Adams' testimony was unreliable. Indeed, he could not do so under the circumstances of this case where he took the deposition himself 2 days before and in preparation for his trial. Thus, we address only the "unavailability" prong of the confrontation clause test.

Whisler contends that Judge Swedberg merely ruled that Adams *might* "be unable to attend" the trial for purposes of ordering that her deposition be taken under CrR 4.6(a), not that Adams *was* unavailable for purposes of ER 804(a)(4) or the confrontation clause. Whisler continues that when the State moved to admit Adams' deposition at trial, Judge Nichols also never made a finding as to Adams' unavailability, but merely assumed that Judge Swedberg had necessarily done so.

Whisler is correct in arguing that a finding that a witness "*may be* unable to attend . . . trial" under CrR 4.6(a) does not necessarily incorporate a finding that a witness *is* unavailable for purposes of ER 804. (Italics ours.) *See*

---

[5]*Green,* 399 U.S. at 165.

[6]Although a higher standard of proof applies to the constitutional requirement of unavailability, *see* comment, ER 804, no case has clearly distinguished between a finding of unavailability that would satisfy the requirements of ER 804(a)(4) but not meet the requirements of the confrontation clause. It appears to be a matter of degree.

*State v. Scott,* 48 Wn. App. 561, 564, 739 P.2d 742 (1987), *aff'd,* 110 Wn.2d 682, 757 P.2d 492 (1988). The court's determinations of "unavailability" under CrR 4.6(a) and ER 804 are clearly different. A finding that a witness "may" be unavailable is not the same as a finding that the witness "is" unavailable. Hearsay is only admissible under ER 804 if the court finds the declarant *is* unable to testify at trial and the "opportunity and similar motive" requirements of ER 804(b)(1) are met.

This analysis does not, however, dispose of the issue before us. Based on our review of the record, we conclude that Judge Swedberg necessarily did find that Adams was unavailable for purposes of ER 804(a)(4), that Judge Nichols also necessarily made such a finding for purposes of the confrontation clause, and that Judge Nichols' reliance on Judge Swedberg's finding of unavailability was proper.

 While Judge Swedberg never stated in so many words that Adams was unavailable for purposes of ER 804 or the confrontation clause, the record clearly indicates that Judge Swedberg's refusal to subpoena Adams was tantamount to a finding that Adams was unavailable under ER 804(a)(4) and that as a result of her unavailability, Whisler could introduce the deposition testimony at trial under ER 804(b)(1). Judge Swedberg made his decision to refuse the subpoena just 2 days before trial, after Whisler confirmed to Judge Swedberg that Dr. Petrak had advised Adams not to travel to Bellingham because of her precarious health. Judge Swedberg stated:

> I'm satisfied that I'm not prepared to issue a subpoena which requires Mrs. Adams to come to Bellingham which may jeopardize her health if not her life.
>
> I'm willing, as I indicated earlier, to arrange for a telephone deposition.

Moreover, at one point, Judge Swedberg expressly stated that he was prepared "to see that a copy of [Adams'] deposition be available for presentment to the jury." Adams' deposition could be introduced at trial only if the trial court found Adams to be unavailable under ER 804(a)(4).

Thus, by refusing to issue the subpoena, authorizing Adams' deposition 2 days before trial, and assuring Whisler the deposition would be available in lieu of Adams' testimony at trial, Judge Swedberg had to have found that Adams was unavailable for trial under ER 804(a)(4).

■ Clearly, Judge Nichols was entitled to rely on Judge Swedberg's ruling of Adams' unavailability when he heard the matter 2 days later. In *State v. Burns,* 112 Wis. 2d 131, 332 N.W.2d 757, 762 (1983), the court held that when one judge made a ruling of unavailability under ER 804(a)(4) 3 months before trial and that ruling was supported by the evidence, a different judge could rely on the first judge's ruling of unavailability in allowing use of the deposition at trial. There is no reason in law or logic to require a new finding only 2 days later. That is especially true when, as is discussed *infra,* the record amply supports the finding that Adams was unavailable.

■ Nor is it a problem with respect to ER 804 that Whisler was the proponent of Adams' deposition but that the deposition was offered against him at trial. Although no Washington cases have addressed this issue, Judge Nichols correctly ruled that, once former testimony is admissible based on a finding of unavailability, it is available to either side for any lawful purpose. ER 804(b)(1) does not by its terms limit the introduction of former testimony at trial to the proponent of the testimony at the former proceeding, and there is no legitimate rationale for making any such distinction so long as the "opportunity and similar motive" requirements of ER 804(b)(1) are met. *See* 5B K. Tegland, Wash. Prac., *Evidence* § 395, at 251 (3d ed. 1989). In the present case, Whisler had ample opportunity to fully examine Adams, and his motive for doing so was the same during the deposition as it would have been at trial. We therefore see no reason to find the deposition inadmissible against Whisler simply because he initially requested that he be allowed to take it.

We recognize that Judge Swedberg's refusal to issue the subpoena does not necessarily lead to the conclusion that

he found that Adams was unavailable for purposes of the confrontation clause. He was not presented with that issue. At the time Judge Swedberg decided not to issue the subpoena, Whisler, not the State, had declared an intent to call Adams as a witness. The right of confrontation was, of course, not implicated at that point.

However, the record compels the conclusion that Judge Nichols ruled that Adams was unavailable for confrontation clause purposes. Whisler objected to the State's motion to admit Adams' deposition testimony, citing a violation of his right of confrontation. After analyzing two cases that Whisler argued compelled exclusion of the deposition because of confrontation clause concerns, Judge Nichols overruled Whisler's objection and admitted the deposition into evidence. Even if Judge Nichols initially relied on Judge Swedberg's finding of unavailability for ER 804(b)(1) purposes, he could not have overruled the objection as it was presented to and reviewed by him unless he was himself satisfied that Adams was unavailable for purposes of the confrontation clause.[7]

Finally, since the entire record amply supports the conclusion that Adams was in fact unavailable both for purposes of ER 804 and the confrontation clause, we have no difficulty holding that both Judge Swedberg and Judge Nichols necessarily made such a finding. *See State v. Moon*, 48 Wn. App. 647, 653, 739 P.2d 1157 (1987) (absence of a finding of fact does not amount to a negative finding where there is uncontroverted evidence in the record supporting the determinations).

### SUPPORTING EVIDENCE

As we have indicated, we disagree with Whisler's argument that the trial court's finding that Adams was

---

[7]There is at least one case in which the court has upheld the admission of deposition testimony against a criminal defendant even though the trial court had made no express finding of unavailability at the time of trial. *United States v. Campbell*, 845 F.2d 1374 (6th Cir.), *cert. denied*, 488 U.S. 908 (1988).

unavailable for purposes of ER 804(a)(4) and the confrontation clause is not supported by the evidence. A trial court's finding of unavailability is a matter within the sound discretion of the trial court and will not be reversed absent abuse of discretion. *In re Estate of Foster,* 55 Wn. App. 545, 554, 779 P.2d 272 (1989), *review denied,* 114 Wn.2d 1004 (1990). The proponent of the former testimony, in this case the State, has the burden of establishing unavailability. *Scott,* 48 Wn. App. at 564.

Whisler first argues that a witness is not "unavailable" for purposes of the confrontation clause unless the prosecution has made a good faith effort to obtain the witness' presence at trial. Because the prosecutor never asked Adams to testify at trial, Whisler contends the State did not fulfill its good faith obligation. It is true that the courts have generally held that the prosecution must make a good faith effort to establish unavailability, a requirement that generally demands at least asking the witness to attend and subpoenaing the witness if refused. *See, e.g., Roberts,* 448 U.S. at 74; *Scott,* 48 Wn. App. at 564–65. Those cases, however, discuss unavailability under ER 804(a)(5), which declares a witness unavailable if the witness is "absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." This definition of unavailability by its terms imposes a good faith requirement.

The cases interpreting ER 804(a)(5) do not, however, dispose of the issue under ER 804(a)(4) and the confrontation clause. The question of whether there is a good faith requirement to secure a witness' attendance at trial when the witness is alleged to be physically or mentally ill is one of first impression in Washington.[8]

---

[8]Courts in other jurisdictions that have directly addressed the issue have held that the good faith effort requirement does not apply to cases in which the witness is unavailable due to medical problems under ER 804(a)(4) or a comparable provision. *See People v. Gomez,* 26 Cal. App. 3d 225, 228, 103 Cal. Rptr. 80, 82 (1972) ("To require proof of reasonable attempts to secure the attendance of a witness who, in any event, could not come to court even if subpoenaed, would be

In a different context, the Washington Supreme Court has held that confrontation clause concerns require the State to make a good faith effort to obtain the presence of child victims at trial before the court can declare the witnesses "unavailable" and admit their hearsay statements pursuant to RCW 9A.44.120, the child hearsay statute. *State v. Ryan,* 103 Wn.2d 165, 170–71, 691 P.2d 197 (1984). In *Ryan* the State had incorrectly assumed that the child witnesses were statutorily incompetent and therefore did not ask them to testify or subpoena them. The Supreme Court ruled that the State was not permitted to determine the competency of the children to testify because such a determination lies within the province of the court and may reflect on the reliability of the proffered hearsay statements. *Ryan,* 103 Wn.2d at 172.

 The confrontation concerns discussed in *Ryan* clearly apply to the unavailability analysis under ER 804(a)(4) as well. However, those concerns are met here. Unlike the prosecutor in *Ryan,* the State in the present case did make a good faith effort to obtain Adams' presence at trial. The prosecutor did not presume Adams was unavailable as did the prosecutor in *Ryan.* Rather, the State was diligent in contacting Adams' physician and was advised that Adams' health would be severely jeopardized if she were required to travel to Bellingham to testify at trial. The State also presented an affidavit and left it to the court to determine whether Adams was unavailable under the applicable rules. Thus, the prosecutor acted in good faith to determine whether Adams was available to testify. In addition, there being no question of the reliability of Adams' deposition testimony, the other concerns of the *Ryan* court are inapplicable here.

The State's duty to make a good faith effort does not require it to urge or attempt to compel a witness to testify

an asinine bow to futility."); *People v. Gross,* 123 Mich. App. 467, 332 N.W.2d 576, 578 (1983).

at trial over the advice of the witness' doctors. As the court in *Burns* noted,·

> [I]t is a legitimate interest of the criminal trial process to protect a victim of crime from needlessly repeating testimony where the victim is presently diagnosed as being severely mentally ill and where the act of testifying again has a significant probability of worsening the condition. It was therefore reasonable for the state to seek to have [the witness] declared unavailable for trial . . ..

*Burns,* at 143.

Whisler next argues that the evidence is insufficient to establish Adams' unavailability because there was no competent expert medical testimony of Adams' physical condition. The evidence at trial supporting Adams' unavailability is twofold. First, the State introduced an affidavit summarizing the prosecutor's conversation with Adams' doctor, Dr. Petrak, who recommended that Adams not testify at trial because of her age and heart problems. Second, Dailey, Adams' daughter, testified that her mother was 94, is legally blind, has a heart condition for which she wears a pacemaker, uses a walker most of the time and is quite frail. Dailey further testified that it would be very exhausting for Adams to travel from Kennewick to Bellingham and that it would in fact be dangerous.

Whisler contends that the prosecutor's affidavit discussing Dr. Petrak's medical opinion is incompetent because it contains a "second-hand report," and that Dailey's testimony regarding her mother's condition is incompetent because it is not expert medical testimony. For reasons discussed below, we reject both contentions.

Although the prosecutor's affidavit summarizing his conversation with Dr. Petrak was hearsay, Whisler failed to object when the State moved to admit the affidavit into evidence. Hearsay evidence admitted without objection may be considered by the trier of fact or the appellate court for its probative value. *In re Marshall,* 46 Wn. App. 339,

343, 731 P.2d 5 (1986).[9] Here, there is no question about the reliability of the State's affidavit. Judge Swedberg gave Whisler the opportunity to talk with Dr. Petrak directly by telephone concerning the substance of the doctor's medical opinion. After speaking with Dr. Petrak, Whisler confirmed to Judge Swedberg that the affidavit accurately reflected the doctor's views. Because Whisler confirmed the accuracy of the State's affidavit, the expert medical opinion of Dr. Petrak is extremely reliable and satisfies the requirement that only trustworthy evidence be considered by the court. *See Ryan,* 103 Wn.2d at 170.

Whisler's argument that Dailey's testimony was incompetent because she is not a medical expert lacks merit. Dailey was certainly competent to testify about facts of her mother's condition that do not require medical expertise to ascertain. Thus, Dailey's testimony that her mother is legally blind, wears a pacemaker, uses a walker and is quite frail was competent evidence relevant to the issue of Adams' unavailability.

Whisler finally argues that the State did not present enough evidence to show that Adams' attendance at trial was "relatively impossible and not merely inconvenient." To support this contention, Whisler cites only the fact that Adams had traveled to Eugene to visit her son. That fact alone is not enough to controvert the overwhelming evidence indicating that Adams was unavailable.

Other courts have found that witnesses were unavailable in cases where the witness has been very elderly and a doctor has advised against the witness' testifying due to physical illness and infirmity. *See, e.g., People v. Murry,* 106 Mich. App. 257, 307 N.W.2d 464, 466 (1981) (where doctor testified 84–year–old burglary victim was hard of hearing, upset about the possibility of testifying, had

---

[9]Under ER 1101(c)(3), the Rules of Evidence prohibiting hearsay testimony under ER 801(d) would not apply in any event to the unavailability determination which is a "preliminary determination[] in [a] criminal [case]". *See* comment, ER 1101(c)(3). Our concern here is with the reliability of the affidavit testimony.

hypertension and that testifying would be detrimental to her health, court upheld with little discussion trial court's finding of unavailability); *United States v. Campbell,* 845 F.2d 1374, 1377–78 (6th Cir.) (elderly witnesses with "health related problems" were unavailable), *cert. denied,* 488 U.S. 908 (1988); *State v. Rich,* 395 A.2d 1123, 1129 (Me. 1978) (state pathologist who had been practicing since 1923, had suffered heart attack, and was under doctor's orders not to testify was unavailable), *cert. denied,* 444 U.S. 854 (1979). Similarly, in the present case, we will not second–guess the opinion of Adams' physician that requiring Adams to travel to Bellingham to testify would pose a serious risk to her health and possibly her life.

We conclude that the trial court properly determined that Adams was unavailable under both ER 804(a)(4) and the confrontation clause. That determination is supported by substantial evidence. Therefore, the trial court properly admitted Adams' deposition testimony into evidence.

The judgment is affirmed.

SCHOLFIELD and BAKER, JJ., concur.