[Nos. 27763-4-I; 27657-3-I. Division One. March 8, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. PHONG THANH NGUYEN, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. TRUNG MINH LE, *Appellant.*

908

Timothy D. Kosnoff and Law Office of Timothy D. Kosnoff, for appellant Nguyen.

*Robert M. Leen,* for appellant Le.

*Norm Maleng, Prosecuting Attorney,* and *Donald Raz, Deputy,* for respondent.

AGID, J. — Phong Thanh Nguyen and Trung Minh Le each appeals his judgment and sentence for first degree robbery while armed with a deadly weapon.[1] Each argues that the trial court erred in finding that the police had probable cause to arrest him without a warrant, defining "deadly weapon" for sentence enhancement purposes, admitting testimony regarding out-of-court identifications allegedly obtained as a result of unlawful and suggestive police procedures, and imposing an exceptional sentence in his case. Nguyen also argues that his speedy trial rights were violated and that the trial court erred in failing to suppress his confession and dismiss his case for destruction of evidence.

Phong Thanh Nguyen and Trung Minh Le were both charged by amended information with six counts of robbery in the first degree in violation of RCW 9A.56.200(1)(a) and RCW 9A.56.190.[2] Each count included a special allegation of use of a deadly weapon in violation of RCW 9.94A.125. The robbery occurred on March 1, 1990. At approximately 8:30 p.m. that evening, Huont Dang returned to her home in Renton with her niece, Thuy Dang, after shopping at Nordstrom. Willie Ho, Huont Dang's 11-year-old son, opened the garage door to let them drive into the garage. As Thuy Dang

---

[1]These cases were not consolidated by the clerk of the court because two separate trials were held. However, they were linked for argument because both cases arise out of the same incident and raise similar issues. For the same reason, we have joined them for purposes of this opinion. The same trial judge presided over both cases, and he is therefore referred to in the singular throughout the opinion.

[2]The general discussion of the facts of these cases is based on evidence brought out in the course of both trials. Where any distinction in the details of the evidence presented at each trial is relevant to the resolution of an issue, that distinction is noted in the text.

was about to get out of the car, several Vietnamese men rushed into the garage and herded Thuy Dang and her aunt into a small laundry room adjacent to the garage. The robbers also put the other members of the household who were home at the time — Kim Tran, Willie's grandmother, and Linda and Julie Ho, Willie's 7- and 8-year-old sisters — in the laundry room. As one of the men, later identified by Thuy Dang as Le, stood guard over the family with a gun, the other robbers searched and ransacked the house. In response to a demand by the man who guarded the family, Thuy Dang gave him her necklace and earrings but hid a bracelet and a ring under the washing machine.

The family was then taken to the master bedroom one by one and made to lie on the floor face down where their arms were tied behind their backs and their legs bound. When the bracelet Thuy Dang had hidden was discovered, one of the men hit her in the face and took her back downstairs to show them where she had hidden the ring. He then returned her to the bedroom and bound her again. When they could find no more valuables, the man who was later identified as Le grabbed Huont Dang's leg and threatened to break it if she did not tell him where more money and valuables could be found. When she did not do so, Le threatened to rape her niece and began to unbutton Thuy Dang's shirt. Le threw Thuy Dang on the bed, put a pillow over her face, and began to remove her pants. Another robber stopped him before he did anything further.[3]

The men remained in the Dang home for approximately 1½ hours. Before leaving, they told the family that if they called the police they would all be killed, since the robbers knew where the family lived and where the children went to school. Le suggested several times that the men shoot the entire family, but they did not do so. After the men left, the family freed themselves and contacted Seattle Police Detective Rich-

---

[3]Nguyen told police officers that he stopped Le from raping Thuy Dang. At Le's trial, Thuy Dang testified that Le stopped and rebound her for the additional reason that he discovered she was menstruating.

ard Sanford with whom they were acquainted through the Seattle business community. The family determined that money and jewelry were stolen from each of the family members and that, in addition, at least one camera was stolen. The family owns a jewelry store, and there was testimony at Nguyen's trial that the jewelry stolen was worth over $10,000.

After Detective Sanford arrived, he and Seattle Police Officer George Nakauye interviewed the family. The family described the robbers as Vietnamese males in their twenties wearing fashionably cut silver, black and gray clothing. After interviewing each member of the family, the officers determined that there were probably four men. The family was able to describe two of the men in more detail. One of those men was taller and older than the others and had a pockmarked face and curly hair. The other was short and slender and wore wire-rimmed glasses and a moustache. The family did not recognize the men as members of the local Vietnamese community in which they were active.

Based on the family's description and their own expertise in Asian gang robbery investigations, Detective Sanford and Officer Nakauye concluded that the robbers were probably from out of state. After contacting other members of the local Vietnamese community, on March 2 Sanford was informed that four Vietnamese males who matched the descriptions given by the family and were new in town had been seen in the Seattle Vietnamese business community getting into a large white 4-door American car with California license plates. The officers located a car matching that description outside a Vietnamese cafe at 12th and Jackson later the same afternoon. After watching the car for a period of time with binoculars, the officers saw four young Vietnamese men dressed in predominantly black and gray, fashionably cut clothes leave the cafe along with a woman and get into the white car. One man was taller than the others and had curly hair and a pockmarked face; another was smaller and wore wire-rimmed glasses and a moustache.

The officers followed the car as it pulled out of the parking lot. The car sped through traffic making sudden lane changes

that the officers perceived as evasive. The car stopped to drop off the woman, turned down a one-way street and doubled back. Believing they had been seen and that the occupants might be heavily armed,[4] the officers conducted a felony stop of the car, ordering its occupants out at gunpoint. While Officer Nakauye and Detective Villagracie removed the four men, including Nguyen and Le,[5] from the car, Detective Sanford checked the car. He noticed a 35-mm Chinon camera in the backseat and a wooden bracelet and a small gold charm in the front seat.[6] Detective Sanford recognized the bracelet and charm as Vietnamese. The officers read the suspects their rights and took them to the West Precinct police station where they were photographed. Those photographs were combined with four other Polaroids to create a montage which officers showed to Thuy Dang and Willie Ho that evening. They identified Le as one of the men who had attacked them. They also identified the camera, bracelet and charm as property which had been taken from them during the robbery.

Later that evening, after they were again advised of their rights, Detective Sanford took statements from Nguyen and Giang Hadai Vo. Nguyen spoke in English during his interview and refused to use a Vietnamese rights form when it was offered. Nguyen told Detective Sanford that the four men had come up to Seattle from California, obtained guns, and followed the two women back to their home after they left Nordstrom. Once there, he said, they ran in, tied up the family and took money and jewelry. Nguyen told Detective

---

[4]According to the later testimony of several members of the Dang family, the robbers were heavily armed. In both cases, Thuy Dang testified that a gun that looked like an Uzi was held close to her face, Huont Dang testified that she saw a big black gun which was also placed against her head, and Willie Ho testified that the robbers who came into the garage carried handguns and that one carried a gun that looked like an Uzi.

[5]The other two men were Giang Hadai Vo and Anh Tuan Hong. Anh Hong was eventually acquitted.

[6]Although Sanford did not know that the camera that had been stolen was a Chinon, he could see that it was a 35-mm autofocus with a small lens.

Sanford that he and his girl friend sold the jewelry at a jewelry store in Seattle the day following the robbery and agreed to take him to that store. At the jewelry store, police recovered Thuy Dang's bracelet and diamonds that had been removed from it along with a bar of gold that had been melted down from a necklace and a ring. Thuy Dang identified the bracelet as hers and Nguyen's girlfriend, Xuyen Tran, identified it as the bracelet she and Nguyen had sold. Xuyen Tran also told the officers that Nguyen split the money from the sale with Le, Vo, and Hong.

Nguyen's case was eventually severed from those of the other defendants. Prior to trial in both cases, the court heard defense motions to exclude evidence obtained as a result of the allegedly unlawful arrest, and to exclude testimony regarding the identification of all the suspects on the ground that it was obtained as a result of unlawful and suggestive police procedures. In Nguyen's case, the court also heard motions to dismiss for violation of Nguyen's speedy trial rights and for destruction of evidence, and a motion to exclude Nguyen's confession. All of these motions were denied by the trial court.

Following each trial, the court gave the jury a deadly weapon instruction and a special verdict form. Nguyen was found guilty on all six counts of robbery in the first degree and of each special allegation regarding use of a deadly weapon. Le was found guilty on five of the six counts of robbery in the first degree and of the special allegation regarding use of a deadly weapon corresponding to each of those counts.[7]

Nguyen, Le and Vo were sentenced at a single hearing on January 10, 1991. At sentencing, Le moved to dismiss or, alternatively, for a new trial on count 2 which alleged robbery of Kim Tran, who had not testified at Le's trial because she was in Vietnam. The trial court denied the motion. Le, with an offender score of 8 and a seriousness level of 9, faced a standard range of 132 to 168 months on each count,

---

[7] The jury was unable to reach a verdict on count 6 alleging robbery of Julie Ho and the State subsequently moved to dismiss that count.

including 24 months for the deadly weapon enhancement. He received an exceptional sentence of 336 months. Nguyen, with an offender score of 11 and a seriousness level of 9, faced a standard range of 153 to 195 months on each count, including 24 months for the deadly weapon enhancement. He received an exceptional sentence of 300 months.

# I
## SPEEDY TRIAL ISSUE

Nguyen first contends that his speedy trial rights were violated when the trial court granted a continuance under CrR 3.3 based on the absence of a state witness. CrR 3.3(h)(2) provides:

> On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense. The motion must be filed on or before the date set for trial or the last day of any continuance or extension granted pursuant to this rule. The court must state on the record or in writing the reasons for the continuance.

The grant or denial of a continuance will not be disturbed on appeal absent a showing of manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). The unavailability of a material state witness is a valid ground for continuing a criminal trial where there is a valid reason for the unavailability, the witness will become available within a reasonable time, and there is no substantial prejudice to the defendant. *State v. Day*, 51 Wn. App. 544, 549, 754 P.2d 1021, *review denied*, 111 Wn.2d 1016 (1988). While CrR 3.3 defines a judicially granted procedural right to a speedy trial, it does not define the limits of the constitutional speedy trial right. *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989).

This case was assigned for trial on Friday, August 10, 1991, 3 days before the expiration date of August 13 set in an earlier speedy trial waiver signed by Nguyen. On that date, the prosecutor informed the court that he had received a call from the Renton Police Department indicating that Detective Leyerle, the primary investigator on the case and a crucial

state witness, had been called for immediate service with the Washington Air National Guard. Defense counsel then made a motion to exclude witnesses, observing that the requirements of the speedy trial rule would thereby be satisfied,[8] and also moved to sever Nguyen's case from that of Anh Hong. On August 13, 1991, the State formally moved to continue the trial under CrR 3.3(h)(2) on the ground that Detective Leyerle had been called to active duty in connection with Operation Desert Shield. Because Detective Leyerle's supervisor was informed that Leyerle would be gone for at least 30 days, the State requested a 50-day continuance.

Nguyen argues that, because Detective Leyerle did not receive a subpoena specifically requiring him to appear at Nguyen's trial, the State failed to take steps to assure the presence of a key witness. The detective testified, however, that he had received a subpoena in connection with the earlier trial of Vo and Le from which Nguyen's case had been severed. The record does not reflect whether the subpoena was served before or after the case was severed. The burden is on the appellant, however, to assure that the record is complete. *State v. Garcia*, 45 Wn. App. 132, 140, 724 P.2d 412 (1986). Thus, in the absence of anything in the record indicating otherwise, there is no reason to conclude that the subpoena served on the officer in the original case did not meet the requirement that the State make " 'timely use of the legal mechanisms available to compel the witness' presence in court' ". *State v. Adamski*, 111 Wn.2d 574, 579, 761 P.2d 621 (1988) (quoting *State v. Toliver*, 6 Wn. App. 531, 533, 494 P.2d 514 (1972)). *Accord, State v. Whisler*, 61 Wn. App. 126, 137, 810 P.2d 540 (1991) (the requirement that the prosecution make a good faith effort to obtain a witness' presence at trial generally entails at least asking the witness to attend and subpoenaing the witness if refused).

In addition, the record reflects that Detective Leyerle had already appeared on September 4, 1990, to testify in connection with preliminary matters related to Nguyen's

---

[8]*See State v. Andrews*, 66 Wn. App. 804, 810-11, 832 P.2d 1373 (1992), *review denied*, 120 Wn.2d 1022 (1993).

trial. This is a further indication that the State properly notified the detective and that he intended to comply with that notification. The witness could have more promptly notified the parties and the court of his unavailability. However, we are not prepared to hold that a witness is required to assess the legal implications of an order federalizing the Air National Guard or to challenge the authority of his commanding officer to order him to report for duty because he is under subpoena. The detective's unavailability was not a personal or voluntary absence, and it was unforeseeable that a call to duty would come just as Nguyen's case was due to go to trial.

Further, Nguyen has not shown that he sustained any prejudice as a result of the continuance. Detective Leyerle actually returned just 1 week after the motion was granted. At that time, the case was continued until August 23. It was later continued an additional day, at defense counsel's request to accommodate his trial schedule. Thus, the portion of the delay attributable to the continuance was only 7 days. For these reasons, and for the further reason that Nguyen's trial did in fact commence with the motion on August 10 which was within the speedy trial period, the trial court did not abuse its discretion in granting a continuance.[9]

## II
## EXCEPTIONAL SENTENCES

Nguyen and Le each argues that the trial court erred in imposing an exceptional sentence in his case.[10] Under the

---

[9]The trial court also properly denied Nguyen's motion to dismiss the charges under CrR 8.3(b). CrR 8.3(b) permits the court, on its own motion in furtherance of justice, to dismiss any criminal prosecution. The power to dismiss under CrR 8.3(b) is discretionary and is reviewable only for a manifest abuse of that discretion. *State v. Getty*, 55 Wn. App. 152, 154, 777 P.2d 1 (1989). Dismissal is an extraordinary remedy and requires a showing of governmental misconduct or arbitrary action, which may include simple mismanagement. *State v. Coleman*, 54 Wn. App. 742, 748-49, 775 P.2d 986, *review denied*, 113 Wn.2d 1017 (1989). Nguyen's contention that the State's failure to serve Detective Leyerle with a second subpoena constitutes mismanagement sufficient to warrant dismissal is without merit. His unavailability at the time of trial was not caused by a failure to notify him but rather by the order of his commanding officer.

[10]Le's pro se appeal from the imposition of consecutive sentences is baseless since consecutive sentences were not imposed.

Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. RCW 9.94A.120(2). In determining whether an exceptional sentence upward should be upheld, a reviewing court considers whether: (1) the reasons given by the trial court to justify the exceptional sentence are supported by the record; (2) those reasons justify a departure from the standard range as a matter of law; and (3) the sentence imposed is clearly excessive. RCW 9.94A.210(4); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991). If the reasons given are supported by the record, the reviewing court must determine whether the reasons for the exceptional sentence are "substantial and compelling" and do not take into account factors already considered in establishing the standard sentencing range for the crime. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). Aggravating factors justifying the imposition of a sentence in excess of the standard range are listed in RCW 9.94A.390. That list, however, is only illustrative and not an exclusive or exhaustive compilation of reasons justifying an exceptional sentence. *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987); RCW 9.94A.390. The question of whether the sentence is clearly excessive is reviewed under an abuse of discretion standard. *Allert*, 117 Wn.2d at 163 (citing *State v. Pascal*, 108 Wn.2d 125, 138, 736 P.2d 1065 (1987)). The trial court concluded that there were substantial and compelling reasons to exceed the standard range based on the particular vulnerability of the victims, the fact that the robbery involved a high degree of sophistication and planning over a lengthy period of time, and deliberate cruelty. RCW 9.94A.390(2). Nguyen and Le challenge each of the trial court's findings.

A. Particular Vulnerability.

Nguyen and Le first challenge the trial court's finding that the victims were particularly vulnerable. For particular vulnerability to justify the imposition of an exceptional sentence, the defendant must know of the particular vulnerability and the vulnerability must be a substantial factor in the accomplishment of the crime. *State v. Vermillion*, 66 Wn.

App. 332, 348, 832 P.2d 95 (1992); *State v. Jackmon*, 55 Wn. App. 562, 566-67, 778 P.2d 1079 (1989).

█ Nguyen and Le argue that the trial court's finding that the victims were particularly vulnerable because of their age and gender under the circumstances is unjustified. Gender is not specified as an aggravating factor under RCW 9.94A.390(2) and age, although potentially a factor, does not, they assert, make a victim more vulnerable when a robbery occurs at gunpoint. The trial court's finding as to the particular vulnerability of the victims, however, is not premised on their age and gender alone, but on their age and gender "under the circumstances".[11] In its oral opinion, the trial court explained that its finding was also based on the fact the robbery was specifically calculated to prey on people already fearful as a result of social and cultural dynamics within the Asian immigrant community.[12] There was specific testimony at Nguyen's trial that many recent immigrants from countries like Vietnam are afraid to report such crimes to the police because their experience prior to coming to the United States has led them to believe that law enforcement and government entities are inherently corrupt and cannot be trusted.[13] The same concerns were obvious in Le's case.[14] In

---

[11]The trial court also found that the defendants knew these victims were particularly vulnerable and preyed upon their vulnerability in committing these robberies.

[12]*In re Marriage of Yates*, 17 Wn. App. 772, 773, 565 P.2d 825 (1977) (a trial court's oral opinion may be utilized by an appellate court to clarify its written findings).

[13]This is reflected in the fact that, although the family here contacted Sanford after the robbery, they did so only because they knew him personally and did not want him to report the crime to the Renton police, who actually had jurisdiction over the crime, because they were so afraid.

[14]In Le's case, Detective Sanford testified about the family's extreme fearfulness after the robbery evident from the questions they asked of him. Their fear was greatly heightened by the robbers' threats to return to do them further harm. These threats were particularly credible to the family because the crime occurred within a community whose shared experiences made them distrustful that the police could prevent those threats from being carried out.

the context of the fearfulness and vulnerability already affecting members of the Vietnamese community, the youth of the three children, especially the 7- and 8-year-old girls, and their grandmother (age 73) made them especially vulnerable to the methods employed in the commission of this particular crime.[15] The trial court's finding that the victims were particularly vulnerable is supported by the record and justifies the imposition of an exceptional sentence as a matter of law.

B. Sophistication and Planning.

Nguyen and Le also contend that the trial court erred in finding that the crime involved a high degree of sophistication and planning as contemplated by RCW 9.94A-.390(2)(c)(iii). To justify an exceptional sentence, the sophistication must be of a kind not usually associated with the offense in question. *Vermillion*, 66 Wn. App. at 346-47; *State v. Wood*, 57 Wn. App. 792, 801, 790 P.2d 220 (citing *State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987)), *review denied*, 115 Wn.2d 1015 (1990). Planning and sophistication may be relied upon as a basis for an exceptional sentence for both noneconomic and economic offenses.[16] *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987).

This crime exhibited a high degree of sophistication and involved a level of planning and organization over and above that typical of first degree robbery. The robbers came up from California, obtained weapons, identified victims who

---

[15]While Nguyen contends that the finding as to the grandmother's age is not supported by the record, the record in his case includes Willie's testimony that he thought his grandmother was 71 at the time the robbery took place. Further, a court may consider information provided in presentence reports submitted in connection with sentencing to which, as here, no objection was made. RCW 9.94A.370(2).

[16]Because we conclude that the trial court's finding is supported by the record and justified based on the noneconomic aspects of the crime, we do not reach the question of whether its finding should also be upheld based on the economic aspects of the crime. However, we recognize that the value of the items taken, over $10,000, is significantly larger than in the usual first degree robberies reviewed by this court.

own a jewelry store and are immigrants who speak their own language, and followed them to their home. There, they acted in concert to invade the garage, herd the family into an adjacent room, tie them up and systematically ransack the home while one of their number stood guard over the family and used threats to extort information as to where money and valuables were hidden. These activities were conducted in a manner that clearly demonstrates a level of coordination and organization that could only have been achieved by careful and sophisticated planning prior to the commission of the crime. The record supports the trial court's exceptional sentence based upon planning and sophistication, and the imposition of an exceptional sentence on that basis is justified as a matter of law.

C. Deliberate Cruelty.

 Nguyen and Le also challenge the trial court's finding of deliberate cruelty.[17] Nguyen argues in particular that the trial court erred in considering his conduct together with that of the other defendants, particularly Le, in making its finding. Where a defendant's conduct in committing a particular offense includes gratuitous violence and is significantly more serious or egregious than is typical of that offense, the sentencing judge is justified in imposing an exceptional sentence. *State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied*, 110 Wn.2d 1007 (1988). Deliberate cruelty has also been defined as gratuitous violence or other conduct which inflicts physical, psychological or emotional pain as an end in itself. *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989).

The finding of deliberate cruelty in this case is supported by factors that distinguish the crime here from other crimes in the same statutory category. The robbers did not simply rob the victims at gunpoint, but terrorized them to an extent unnecessary to achieve their criminal purpose. They bound the victims and held them hostage for over an hour and a

---

[17]Le's argument that the trial court's finding that Huont Dang's arms and legs were broken must be vacated is without merit since the finding is clearly intended to refer to Le's threats to that effect.

half while threatening to shoot them or otherwise physically harm both the adults and children then and in the future. This was done partly in an attempt to extort additional money and valuables and partly to assure that the family would be too frightened to report the robbery.[18] This infliction of psychological and emotional pain over and above that necessary to simply rob the victims constitutes deliberate cruelty sufficient to justify the imposition of an exceptional sentence.

While Nguyen argues that his discouraging Le from raping Thuy should be regarded as a mitigating factor,[19] nothing in the record suggests that Nguyen did not fully participate in all other aspects of the crime in his own right or as an accomplice. As the trial court noted in its oral opinion, the victims were terrorized by means that required the cooperation and participation of the entire group, not just the actions of a single person among them. The record reflects that, to the extent it was possible to distinguish the actions of the individual robbers, the trial court made that distinction. It was for precisely this reason that Le's sentence was 3 years longer than that of either Nguyen or Vo, even though his standard range was lower than Nguyen's and he was found guilty on only five of the six counts with which he was charged. As the trial court explained in its conclusion of law:

---

[18]A court may properly consider the effect of a crime on the victims, including the social and psychological impact on them. RCW 9.94A.110; RCW 7.69.030(1). *See also State v. Tunell*, 51 Wn. App. 274, 280, 753 P.2d 543 (serious psychological effect of threats of death and intimidation justified an exceptional sentence because it was significantly greater than that normally inherent in the crime of rape), *review denied*, 110 Wn.2d 1036 (1988). The extent of the psychological impact of the robbers' tactics is reflected in the fact that the family sold their home of 6 months at a $40,000 loss out of fear that the robbers or their associates would return to carry out the threats they made.

[19]It is a mitigating factor that

"[t]he offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim." RCW 9.94A.390(1)(f). A trial court is not required, however, to enter findings regarding mitigation where the findings entered concerning aggravating factors support an exceptional sentence. *State v. Altum*, 47 Wn. App. 495, 505, 735 P.2d 1356, *review denied*, 108 Wn.2d 1024 (1987).

Le's term of incarceration is greater than Vo's and Nguyen's term because Le was the leader of the group during the course of the robbery and personally inflicted more physical and verbal abuse on the robbery victims than did Vo and Nguyen.

The deliberate infliction of emotional distress and terror well beyond that necessary to accomplish the robbery was in itself justification for imposing an exceptional sentence on the basis of deliberate cruelty.

We also do not find that the sentences imposed were clearly excessive. A trial court abuses its discretion in this regard only when it imposes a sentence that no reasonable person would have imposed. *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). Here, the sentencing judge was presented with facts that supported not just one but several aggravating factors, and neither sentence was more than double the standard range. The sentences were not clearly excessive.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

GROSSE and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1008 (1993).