[No. 34849-7-II.  Division Two.  September 18, 2007.]

NORMA M. KINSMAN, *Respondent*, v. MICHAEL ENGLANDER ET AL., *Appellants*.

*Mark R. Roberts* (of *Davis Roberts & Johns, PLLC*), for appellants.

*Robert W. Denomy, Jr.*, for respondent.

¶1 BRIDGEWATER, J. — Michael and Carolyn Englander appeal from a trial court's order to quiet title to a portion of disputed property in favor of Norma M. Kinsman. We hold that due to advanced age and physical infirmities, the use of the deposition of a material witness was appropriate because she was unavailable at trial. But, we hold that the use of telephonic testimony of the same witness in rebuttal was improper without the consent of both parties. Here, allowing the telephonic testimony was harmless error. Because there was substantial evidence of acquiescence in the boundary line, we affirm the judgment of the trial court.

## FACTS

¶2 Since 1994, Norma Kinsman has owned waterfront property on Puget Sound. Kinsman, who has been living on the property since the mid-1930s, inherited it from her mother, Olga Johnson. At her turn, Olga Johnson inherited the property from her father, Olaf Johnson, in the mid-1950s. In 2002, Michael and Carolyn Englander purchased adjoining waterfront property from Beverly Vergowe, the Johnsons' and then Kinsman's neighbor since 1967.

¶3 In 2003, the Englanders surveyed their property. This 2003 survey indicated that Kinsman's bulkhead extended over the boundary line between the two properties by approximately 18 inches.[1] In 2004, based on this survey, Kinsman's counsel sent a letter to the Englanders asserting ownership of this strip of property extending from the edge of the bulkhead to the garden wall.

---

[1] A 2006 survey also indicated that Kinsman's garden wall extended over the boundary line between the two properties by approximately 10-12 inches.

¶4 Nevertheless, the Englanders constructed a chain link fence between the two properties.[2] Relying on the 2003 survey, the Englanders constructed it within "a quarter of a foot" of the surveyed boundary line between the two properties, running from the bulkhead inland to the garden wall. 1 RP at 114.

¶5 Thereafter, Kinsman filed a complaint to quiet title in the property. Among other things, she claimed:

> The boundary line between Plaintiff's property and Defendant's [sic] property has been formed by connecting two well-established points between the two properties. The first point is formed at the waterfront by the eastern wall of a bulkhead (the "Lookout") constructed by Plaintiff in 1983. The second point is inland from the waterfront approximately 150 feet. This point is formed by the eastern wall of a cinder block wall enclosing a landscaped garden area maintained by Plaintiff for over thirty years. The eastern wall forms a continuation of the established boundary line.

CP at 4.[3]

¶6 At the bench trial, Kinsman advised the trial court that Vergowe was unavailable as a witness due to her advanced age[4] and the severity of her medical conditions. Over the Englanders' objections, the trial court telephoned Vergowe and asked her if she could be available as a witness. After speaking with Vergowe, the trial court agreed that she was unavailable as a witness. Thereafter, the court admitted Vergowe's videotaped deposition under ER 804(b)(1).

---

[2] There is some discrepancy as to whether the Englanders constructed the chain link fence in the spring of 2003 or the spring of 2004.

[3] Kinsman also noted:

> The area between the established line and the survey line is the "disputed property". During the process of constructing this fence, Plaintiff's son interceded and pulled out the fence posts on the bulkhead lookout. Police were summoned to keep the peace, and the parties were advised to take no further action regarding the fence.

CP at 5.

[4] At the time of the trial, Vergowe was 81 years old.

¶7 After the Englanders rested, Kinsman informed the trial court that she wanted to call Vergowe as a rebuttal witness. Again, the Englanders objected. But over their objections, the trial court once again spoke with Vergowe by telephone. After finding that her condition had not changed, the trial court then concluded, "I would allow her to again testify by way of [telephone] with the opportunity of both counsel to ask her questions." 6 RP at 820.

¶8 Ultimately, the trial court concluded that Kinsman was entitled to all right, title, and interest in the "disputed property," that portion of property extending from the bulkhead to the garden wall, approximately 10 to 15 inches wide. CP at 92. The Englanders appeal.

## ANALYSIS

### I. UNAVAILABILITY OF VERGOWE

¶9 The Englanders claim that the trial court erred in finding that Vergowe was unavailable as a witness. Furthermore, the Englanders claim that the trial court erred in thereby admitting Vergowe's former testimony in the form of a videotaped deposition. But based on sufficient evidence that Vergowe was unavailable due to her age, illness, and infirmity, we agree that the trial court properly admitted Vergowe's videotaped deposition.

¶10 The use and admissibility of depositions at trial is controlled by CR 32 and ER 804(b). CR 32 addresses the use of depositions in court proceedings. *Hammond v. Braden*, 16 Wn. App. 773, 774-75, 559 P.2d 1357 (1977). Among other things, CR 32 permits the use of a witness's deposition for any purpose if the court finds that "the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment." CR 32(a)(3)(C).

¶11 ER 804(b) is a hearsay exception that permits the admission of a deposition when the witness is unavailable[5] at trial and where the party, against whom the testimony is now offered, had an opportunity and similar motive to develop the witness's testimony by direct, cross-, or redirect examination. ER 804(b)(1). "ER 804(b)(1) requires the proponent of the evidence to establish unavailability of the [witness] before deposition testimony may be admitted at trial." *State v. Scott*, 48 Wn. App. 561, 564, 739 P.2d 742 (1987), *aff'd*, 110 Wn.2d 682, 757 P.2d 492 (1988).

¶12 "A trial court's finding of unavailability is a matter within the sound discretion of the trial court and will not be reversed absent abuse of discretion." *State v. Whisler*, 61 Wn. App. 126, 137, 810 P.2d 540 (1991). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

¶13 Here, during the March 2006 trial, Kinsman advised the trial court that Vergowe was unavailable as a witness due to her advanced age and the severity of her medical conditions.[6] Kinsman's counsel then handed the trial court a declaration from December 13, 2005, in which counsel stated:

> 3. Beverly Vergowe currently resides at . . . a full-time adult assisted-living facility. Ms. Vergowe is wheelchair bound and receives continuous supplemental oxygen. She has severe diabetes and has been hospitalized at least once since these proceedings began. She is presently unable to transport herself.
>
> 4. Prior to scheduling the deposition, Ms. Vergowe advised your declarant . . . that if she were subpoenaed for trial, or a

---

[5] Unavailability includes situations in which the witness is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity. ER 804(a)(4).

[6] Kinsman initially informed the trial court that "[Vergowe] had just returned from the hospital last night from being in intensive care. And she was able to talk to me but she was in no condition to come to the courthouse." 2B RP at 5. Later, in response to a question from the trial court, Kinsman explained, "Your Honor, at the time that we were attempting to conduct the deposition, she had been in and out of the hospital on several occasions." 2B RP at 8-9.

deposition away from her present residence[,] that she would disregard the subpoena, even at the risk of incurring contempt of court. Defendant's counsel was advised of this conversation.

CP at 39.

¶14 The Englanders objected. They argued that they did not have current knowledge of Vergowe's condition. Kinsman countered that Vergowe's physical condition was apparent at the deposition and the Englanders knew that she was a material witness.

¶15 The trial court then decided to telephone Vergowe. "[W]e will call her to find out whether or not she is available to testify, whether or not she is and if she says no, she isn't, then that's the end of it." 2B RP at 15. Using the speakerphone, Vergowe told the trial court that among other things, she suffered from congestive heart failure, diabetes, chronic obstructive pulmonary disease, and stenosis, and that she required supplemental oxygen for breathing. Vergowe told the trial court that she was 81 years old. And Vergowe informed the trial court that she was confined to a wheelchair and relied on others for transportation.

¶16 After realizing that Vergowe had not been answering its questions under oath, the trial court then placed her under oath. Next, the trial court asked Vergowe, "[I]s it your belief that you are not able to physically be present in Court and would prefer us using your deposition?" 2B RP at 17. Vergowe replied, "Yes." 2B RP at 17. And the trial court inquired, "And that is based upon your medical infirmities?" 2B RP at 17-18. Vergowe answered, "Yes." 2B RP at 18.

¶17 Ultimately, the trial court thanked Vergowe, telling her, "I appreciate your taking the time today. You will not have to formally appear." 2B RP at 18. The trial court then stated, "Okay. That leads us on to the deposition." 2B RP at 18.

¶18 Based on the evidence before it, we hold that the trial court did not abuse its discretion in determining that Vergowe was unavailable and in admitting her videotaped

deposition under ER 804(b)(1). Although Kinsman did not provide the trial court with any opinions or recommendations from Vergowe's doctors or caregivers, the trial court nevertheless: (1) spoke directly with Vergowe, (2) heard from Kinsman's counsel regarding his declaration, and (3) viewed Vergowe's condition at the time of her videotaped deposition. And after reviewing Vergowe's videotaped deposition in an effort to determine whether there was sufficient evidence to support the trial court's decision, much as if we were to review any other evidence without examining credibility, we agree that Vergowe is both aged and physically infirm.

¶19 Moreover, Vergowe's conversation with the trial court established that she: (1) was hard of hearing, (2) suffered from several conditions and ailments, (3) relied on others for transportation, and (4) believed that she was not physically capable of being a witness in court. This evidence, coupled with Kinsman's counsel's declaration and the actual videotaped deposition showing Vergowe in a wheelchair and revealing her physical condition, supports the trial court's finding that she was unavailable as a witness. Thus, Kinsman met her burden of establishing Vergowe's unavailability. And the trial court did not abuse its discretion in admitting her videotaped deposition under ER 804(b)(1).

## II. TELEPHONIC TESTIMONY

¶20 The Englanders claim that the trial court erred in allowing Vergowe to testify telephonically as a rebuttal witness. On the other hand, Kinsman argues that the trial court had the discretion to hear testimony in a manner other than orally in open court. Although little case law exists regarding telephonic testimony, we agree with the Englanders that the trial court erred in allowing Vergowe to testify telephonically without their consent.

¶21 After the Englanders had rested, Kinsman informed the trial court that she wanted to call Vergowe as a rebuttal witness, stating:

And my first witness is Beverly Vergowe. I have just confirmed with Beverly that she is available telephonically and we had set a precedent in regard to that previously concerning her availability and I am asking [that] the Court set up the same conference call this morning for purposes of impeachment.

6 RP at 810.

¶22 The Englanders objected, saying:

I object, Your Honor. This witness needs to appear here live. That was the whole point of allowing the admission of this preservation deposition. To now try and have this witness appear by telephone after saying she is unavailable and saying it was imperative that they use this video, it's not appropriate for them now to say she is available and should be allowed to testify by phone.

6 RP at 810.

¶23 Nevertheless, the trial court again spoke with Vergowe by telephone. The trial court then concluded, "I am going to still allow her to testify by telephone under [ER] 804(a)(4)." 6 RP at 819. "I would presume that her infirmity and her health has not changed in accordance to her testimony and I asked her that directly and therefore, I would allow her to again testify by way of [telephone] with the opportunity of both counsel to ask her questions." 6 RP at 820.

■ ¶24 In this context, we start our analysis with CR 43, which provides, "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise directed by the court or provided by rule or statute."[7] CR 43(a)(1). No Washington court has yet to interpret the phrase "unless otherwise directed by the court."[8] But our court rules strongly favor the testimony of

---

[7] This rule is in contrast to RCW 26.27.111(2) (under the Uniform Child Custody Jurisdiction and Enforcement Act, chapter 26.27 RCW, a court of this state may permit an individual residing in another state to be deposed or to testify by telephone) and MAR 5.3(a) (a witness may testify by telephone in the discretion of the arbitrator).

[8] Under Fed. R. Civ. P. 43(a), it appears that a trial court may permit telephonic testimony over the objection of a party. But the wording of Fed. R. Civ. P. 43(a),

live witnesses whenever possible so that the fact finder may observe the witnesses' demeanor to determine their veracity. Thus, we believe that CR 43(a) presupposes that a witness will be physically present in the courtroom to give oral testimony. But we agree with Kinsman that under CR 43(a) the trial court may direct otherwise. Nevertheless, we are persuaded that where there is no statute or court rule permitting telephonic testimony, the trial court may direct the telephonic testimony of witnesses only after all parties' consent.

¶25 In such a manner, we still favor the testimony of live witnesses whenever possible but recognize the increasing reality that some witnesses, who may be unable to attend trial, are nevertheless able to testify from a different place via the telephone. And, among other things, consent by all the parties ensures that (1) the opposing party has an opportunity to argue for attendance of the witness at trial and (2) the trial court can adopt appropriate safeguards to ensure the accurate identification of the witness and protect against influence by persons present with the witness.[9] Thus, based on this analysis, we hold that the trial court erred in allowing Vergowe to testify telephonically without the Englanders' consent.

---

modified by the United States Supreme Court in 1996, is substantially different from the wording of CR 43(a). For instance, Fed. R. Civ. P. 43(a) provides:

> In every trial, the testimony of witnesses shall be taken in open court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise. The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.

In contrast, our Supreme Court has yet to modify CR 43 in such a manner. And there is no authority interpreting CR 43 to allow telephonic testimony without the parties' consent.

[9] Alternatively, this procedure provides the parties an opportunity to depose the witness, perhaps by video record.

■ ¶26 Nevertheless, we note that the trial court's error was harmless.[10] Vergowe's rebuttal testimony was only minimally useful to impeach her testimony in her videotaped deposition. For instance, when the trial court asked Vergowe whether she had told a neighbor that she owned part of the bulkhead, Vergowe merely repeated what she had said during her deposition: "I don't know, if I did. I didn't actually own—I never said that I owned. We just gave that little part down there to Mr. Johnson[11] and I wouldn't have said I owned it." 6 RP at 841. Vergowe's testimony from the properly admitted videotaped deposition was neither bolstered nor undercut by this telephonic testimony. Finally, Vergowe's testimony in her videotaped deposition, by itself, supported the trial court's decision regarding acquiescence.

¶27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT and QUINN-BRINTNALL, JJ., concur.

---

[10] An error in admitting evidence that does not result in prejudice to the defendant is not grounds for reversal. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

[11] As referred in this opinion, "Mr. Johnson" is William (Bill) Johnson, Kinsman's father and Olga Johnson's husband.